NOT FOR PUBLICATION                                    [Docket No. 19]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
CHRISTOPHER M. WELCH,              :
                                  :
              Plaintiff,          :
                                  :    Civil No. 05-4759(RMB)
       v.                         :
                                  :
DIRECTOR NUNN, et al.,            :    OPINION
                                  :
              Defendants.         :
```

Appearances:

Christopher M. Welch
2546 Memphis Street
Philadelphia, Pennsylvania 19125-0022
      Plaintiff Pro Se

Mark Joseph Dianno, Esq.
Ronald L. Daugherty, Esq.
Salmon Ricchezza Singer & Turchi
Woodcrest Pavillion
10 Melrose Avenue
Suite 450
Cherry Hill, New Jersey 08003
      Attorneys for Defendants

**BUMB**, United States District Judge:

**Introduction:**

    This matter comes before the Court upon a motion by

Defendants, Gloucester County Department of Correctional

Services, Director Nunn, Warden Tevoli, and Captain Pistorio

(collectively referred to as "Defendants") to dismiss Plaintiff's

1

Complaint for failure to state a claim upon which relief may be granted.  For the reasons discussed below, Defendants' motion will be granted in part and denied in part.

Plaintiff's claims stem from his experiences during his incarceration at the Gloucester County Prison ("the Facility"). While Plaintiff originally filed this action on October 3, 2005, he was given leave to file an Amended Complaint, and did so on April 24, 2006.  Defendants have filed their motion to dismiss in response to that Amended Complaint.  Because this is a Rule 12(b)(6) dismissal motion, the Court will, as it must, accept as true the well-pleaded allegations contained in the Plaintiff's Amended Complaint.[1]  <u>Brown v. Card Serv. Ctr</u>., 2006 U.S. App. LEXIS 24579 at * 4-5 (3d Cir. Sept. 29, 2006).


**Background:**

On March 10, 2004, Plaintiff became an inmate at the Gloucester County Prison.[2]  The events in the Amended Complaint are alleged to have taken place while Plaintiff was incarcerated at the "3-C Pod" section of the Facility.  (Pl.'s Amended

---

[1] Plaintiff filed both an affidavit and brief in opposition to Defendants' motion.  Because this is a 12(b)(6) motion, this Court has neither considered nor relied on the affidavit. <u>Robinson v. Fauver</u>, 932 F. Supp. 639 at n.2 (D.N.J. 1996).

[2] Plaintiff was then moved to and housed in S.C.I. Coal Township, 1 Kelley Drive, Coal Township, Pennsylvania.  The Pennsylvania Department of Corrections informed this Court that Plaintiff was released on July 9, 2006, [Docket No. 31].

Complaint at ¶ 13).  Plaintiff alleges that on several occasions, he complained that he was having problems gaining access to the law library, getting food cooked and "not served ice cold", gaining cleaning materials to clean the cell and housing unit, getting inmates' clothing washed and about the harassment Plaintiff experienced for filing such grievances regarding these issues.[3]  (Id. at ¶ 14).  Because Plaintiff was prevented by Defendants from using the law library, he was not able to complete research on a "motion for reconsideration to sentence, appeal and/or post-conviction relief," and as a result is now barred from making his claims and is "forever stuck with [a] large invoice" as a result.  (Id. at ¶¶ 27 & 37).  Plaintiff also asserts that he and over sixty other inmates and ten staff members contracted a staph infection because they were unable to get cleaning supplies and wash clothing. (Id. at ¶¶ 24 & 41).[4]

On July 27, 2004, Plaintiff was using the bathroom in the "fish bowl area" when John Doe #1 - Corrections Officer Huber ("Huber") - attempted to lock him in that area.  When Plaintiff informed Huber that he did not belong in that area, except to use the bathroom, Plaintiff asserts that Huber snatched him by the

---

[3] In addition to harassment, Plaintiff states he was retaliated against when his food was "tampered with" and when he did not receive haircuts when it was his time. (Pl.'s Amended Complaint at ¶¶ 33 & 43).

[4] More specifically, Plaintiff states that he has suffered from infection over three times. (Id. at ¶ 41).

arm, pinned him against the wall, hit him with his handcuffs, and pushed him down approximately 20 steps.  (Id. at ¶ 17).  As a result, Plaintiff became dizzy and unable to stand and Huber told him, "I'm sick of your bullshit, and you filing these grievances!" (Id. at ¶ 18).[5]  Plaintiff was then escorted by Huber and John Does 2 and 3 to 3C-Pod where Plaintiff had a "grand mal seizure from the stress he was experiencing." (Id. at ¶¶ 18-19).  Plaintiff requested medical treatment. (Id.).  In response, Huber "spat" on the Plaintiff, made a derogatory remark and told him to get up.  Plaintiff was then taken to receive treatment.  (Id. at ¶ 20).

Following medical treatment, Huber gave Plaintiff a "misconduct" to "cover up his wrongdoing." (Id.).  While Plaintiff requested that he be able to present an inmate and staff witness regarding the incident, his request was denied. (Id.).  Plaintiff spoke with Lieutenant "Jane Doe #1" about the July 27, 2004 incident and his other complaints and that those matters were not investigated or taken seriously.  (Id. at ¶ 21).

Plaintiff filed a grievance about all of his various previous grievances being thrown away and the fact that there was no "grievance box" on the cell block; Plaintiff also tried to file grievances through the mail.  (Id. at ¶¶ 23, 24 & 50).

---

[5] Huber also allegedly told Plaintiff "You need to stop being a jailhouse lawyer, and helping guys out! So what if their rights are being violated!" (Id. at. ¶ 44).

Despite presenting these facts in his grievances, Plaintiff's problems were never investigated and he never received any response. (<u>Id.</u> at ¶ 25). In addition to filing grievances, Plaintiff states that he spoke with Tom Doyle regarding his issues and wrote to Captain Pistorio about the problems and the fact that he and other inmates were threatened by guards several times for filing grievances. (<u>Id.</u> at ¶¶ 15 & 22). On August 21, 2004 and September 29, 2004, after Plaintiff was transferred out of the Facility, he wrote to Warden Tevoli regarding all of his grievances but has never received a response. (<u>Id.</u> at ¶ 26).

Plaintiff states that because of Defendants' violations, Plaintiff "sustained injuries including but not limited to bruises and pain throughout the left side of my face, body, and lower back" and that some of these injuries may be permanent. (<u>Id.</u> at ¶ 28). By way of relief, Plaintiff requests compensatory and punitive damages, the costs of filing suit, interest and injunctive relief.

**Applicable Standard:**

A Rule 12 (b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied unless it appears that no relief can be granted under any set of facts that could be proved consistent with plaintiff's allegations. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). A district court is

5

"required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

The Court notes that, generally speaking, "[p]ro se submissions, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Then v. I.N.S., 58 F. Supp. 2d 422, 429 (D.N.J. 1999) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

However, a complaint should be dismissed if, accepting all plaintiff's allegations and the reasonable inferences to be drawn therefrom, no relief could be granted under any set of facts to be proved. Watts v. IRS, 925 F. Supp. 271, 275 (D.N.J. 1996). There must be an actual, actionable claim underlying the Complaint's allegations. Hishon, 467 U.S. at 73.

**Discussion:**

Plaintiff's Amended Complaint asserts several causes of action each stemming from his time at the Facility (from March 10, 2004 through August 12, 2004). Plaintiff makes allegations against several Defendants, individually and in their official

6

capacities, including: Director Nunn, the Director of the
Facility; Warden Tevoli, the Facility's Warden; Captain Pistorio,
the Facility's Captain; the Gloucester County Department of
Correctional Services; John Doe #1, a.k.a. Correctional Officer
Huber; Jane Doe and several other John Doe Defendants.  (Pl.'s
Amended Complaint ¶¶ 4-12).  Specifically, Plaintiff's Amended
Complaint contains eleven different counts[6] covering various
alleged constitutional violations and state law violations, which
include the following: a violation of his First Amendment rights
for a violation of his right to access to the courts and prison
law library; violations of the Eighth Amendment for denial of
sanitary prison units and food, retaliation for filing prison
grievances, and unnecessary use of force; violations of the Equal
Protection Clause of the Fourteenth Amendment for failure to
protect and for inadequate processing of grievances; violations
of the Due Process Clause of the Fourteenth Amendment for denial
of witness for prison disciplinary proceeding; and, state law
claims for reckless endangerment, harassment and assault and
battery.

Plaintiff's federal claims are brought pursuant to 42 U.S.C.
§ 1983.  When bringing an action under 42 U.S.C. § 1983, a
Plaintiff must satisfy a two-prong test by showing that: 1) the

---

[6] Plaintiff's Amended Complaint lists the counts from one
through twelve - but there is no number eight.  For the sake of
consistency, the Court will refer to Plaintiff's counts as he
numbers them - eliminating a count number eight.

conduct complained of was committed by a person acting under color of state law, and 2) the conduct deprived that person of rights guaranteed by the United States Constitution.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

### *Claims Asserted Against Gloucester County Correctional*

As an initial matter, this Court will address Defendants' argument that the Department of Corrections is not a "person" amendable to suit under 42 U.S.C. § 1983.  Defendants are correct that Plaintiff's complaint fails to state a claim upon which relief can be granted with regard to claims made against the Department of Corrections.  It is well established that jail facilities are not considered "persons" for purposes of Section 1983 liability.  <u>See</u> <u>Grabow v. Southern State Correctional Facility</u>, 726 F. Supp. 537, 538-39 (D.N.J. 1989); <u>Mitchell v. Chester County Farms Prison</u>, 426 F. Supp. 271, 274 (E.D. Pa. 1976).  Accordingly, the Complaint will be dismissed in its entirety as against the Gloucester County Department of Corrections pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### *Claims Against Prison Officials - Official and Individual Capacities*

In addition to claims made against the Facility, Plaintiff asserts claims against Director Nunn, Warden Tevoli and Captain

Pistorio in both their individual and official capacities. (Pl.'s Amend. Comp. at ¶ 12).

A § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978). "[I]n an official-capacity action, . . . a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

> A policy or custom may exist where
>
> the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (internal quotations and citations omitted). Here, Plaintiff alleges that Defendants engaged in an "ongoing pattern" of violations and that the Department of Corrections "systematically fails to properly investigate Corrections officers/staff who are subject to repeated allegations[.]" (Pl.'s Amend. Comp. at ¶¶ 30 & 32). Construing Plaintiff's

pleadings liberally, he is essentially alleging a policy or custom of indifference, which, at this juncture, indicates that his claims against the Defendants in their official capacities should be allowed to proceed.

With regard to individual liability, the Court notes that supervisory officials are not liable under § 1983 based solely on the theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985). Instead, a defendant must "have personal involvement in the alleged wrongs", which can be shown "through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Plaintiff alleges that his grievances and various requests were denied or ignored by the individually named Defendants. Plaintiff makes several claims that he made these Defendants aware of the alleged violations. (Pl.'s Amed. Comp. at ¶¶ 14, 15, 22, 23, 24, 25, 26). Specifically, Plaintiff asserts that he wrote to and explained to Captain Pistorio that he was threatened by guards for filing grievances. (Id. at ¶ 15). Plaintiff also states that he brought his complaints about not being able to obtain cleaning supplies and other problems to the attention of "all the [D]efendants." (Id. at ¶ 22).

Defendants argue that Plaintiff complained to Defendants Pistorio and Tevoli after the fact and that "[a]fter-the-fact-notice of purported problems is insufficient to establish

10

personal involvement of a public official." (Defs.'s Br. at 8-9).
While some of Plaintiff's complaints and grievances occurred
after the complained of conduct, there are sufficient general
allegations, at this stage in the litigation, that Defendants
knew of the unconstitutional conduct and acquiesced.  See Alston
v. Parker, 363 F.3d 229 (3d Cir. 2004) (stating that a plaintiff
need not plead facts and to withstand a 12(b)(6) motion "a
plaintiff need only make out a claim upon which relief can be
granted").

     Assuming that such allegations are true, as the Court must,
this Court will allow the Amended Complaint to proceed against
the Defendants in their individual capacities.  Although
Defendants argue that they had no personal involvement, there are
numerous allegations that they were made aware of Plaintiff's
alleged grievances and did nothing.  Id. at 234 (stating that
"[c]ourts are to construe complaints so 'as to do substantial
justice' Fed. R. Civ. P. 8(f), keeping in mind that pro se
complaints in particular should be construed liberally.") (citing
Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003)).  Of
course, upon completion of discovery, the Defendants will be
entitled to file a motion for summary judgment if Plaintiff
cannot produce evidence of the Defendants' knowledge or
involvement.

*Access to Courts (Count One)*

In Count One of his Complaint, Plaintiff alleges that his First Amendment rights were violated when Defendants denied him access to the courts and access to the prison law library "to complete legal work for his criminal matter." (Pl.'s Amend. Comp. at ¶ 37). As a result of such denial, Plaintiff asserts that his claim of "excessive & harsh amount of restitution" is time-barred and "he is forever stuck with this large invoice." Id.[7]

The right to access the courts is an aspect of the First Amendment right to petition the government to redress grievances. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). In order to state a claim for a violation of that right, a prisoner must show that prison officials caused him past or imminent actual injury by hindering his access to the court. Lewis v. Casey, 518 U.S. 343, 348-55 (1996). Actual injury can be demonstrated by showing that the actions of defendants resulted in the "loss or rejection of a legal claim." Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997). Only an arguable, non-frivolous claim will demonstrate an actual injury. Christopher v. Harbury, 536 U.S. 403, 415 (2002).

---

[7] At the outset of its examination of Plaintiff's claims that he was not provided adequate access to the courts in violation of the First Amendment, this Court notes that Defendants have not addressed this issue individually in their moving papers as they have done with each other count of the Plaintiff's Amended Complaint.

12

At this stage in the litigation, Plaintiff's pleading has met the standard because he has a asserted that as a result of denial of access to the courts, his claim was time-barred and he has been subjected to a more severe form of "restitution"; thus, his claim should be permitted to proceed.  See Lane v. Folino, 2006 U.S. Dist. LEXIS 11611 (M.D. Pa. March 21, 2006)(finding that plaintiff's denial of access to courts claim survived a 12(b)(6) motion where plaintiff alleged that defendant destroyed his legal materials because plaintiff was preparing to file a lawsuit).

### Conditions of Confinement (Count Two)

In Count Two, Plaintiff asserts that Defendants violated the Eighth Amendment when Plaintiff was denied "adequate and sanitary prison units, cells, clothing, and food." (Pl.'s Amend. Comp. at ¶ 39).  As a result, Plaintiff and several inmates allegedly contracted staph infections on several occasions.  Plaintiff alleges that the Defendants were aware of the conditions that caused the infections.

It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 32 (1993).  In order to state such a claim, a plaintiff must allege both an objective and subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).

13

The objective component requires that the deprivation be sufficiently serious:

> extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.

Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotations omitted).  The subjective element requires that a prison official acted with "a sufficiently culpable state of mind, i.e., deliberate indifference."  Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

Plaintiff makes several allegations as to why the conditions of confinement were such that he was deprived of his Eighth Amendment Rights.  Specifically, he alleges that he was denied adequate and sanitary prison unit, cell, clothing and food.  The alleged lack of cleaning supplies led to a build-up of bacteria, which, Plaintiff states, gave him and other inmates several staph infections.  At this point in the litigation, Plaintiff has satisfied the objective component of the test: he has alleged that the repeated denial of sanitary conditions over a period of time resulted in repeated infections.  See Howard v. Adkinson, 887 F.2d 134, 137 (8th Cir. 1989) ("[i]nmates are entitled to reasonably adequate sanitation, personal hygiene and laundry privileges, particularly over a lengthy courser of time.");
Lopez-Diaz v. County of Lancaster, 2003 U.S. Dist. LEXIS 4739 at

14

*7 (E.D. Pa. Mar. 27, 2003) (stating that "[t]he alleged denial of adequate hygiene over an extended period of time resulting in a severe and persistent rash sufficiently states an objective serious deprivation for the purposes of the Eighth Amendment.").

While at this point, it cannot be definitively determined from the record whether the officials acted with deliberate indifference, Plaintiff makes allegations that the Defendants knew of the problems and were deliberately indifferent.  (Pl.'s Amend. Comp. at ¶¶ 39 & 40).  Therefore, at this stage, Plaintiff has also satisfied the subjective component and Count Two will not be dismissed.

### Retaliation (Count Three)[8]

Plaintiff alleges that, as a result of filing his various grievances regarding all of the problems he experienced while in the Facility, he was denied access to the library, given a false misconduct, placed in disciplinary custody, his food was tampered with, he failed to receive haircuts, and he was harassed by Defendants.

In order to state a claim for retaliation a prisoner must show 1) constitutionally protected conduct, 2) an adverse action by prison officials, which is sufficient to deter a person of

---

[8] While Plaintiff frames this claim in terms of an Eighth Amendment violation, this Court, keeping in mind that Plaintiff is pro se, will not limit Plaintiff's allegations to a theory of recovery under the named Amendment.

ordinary firmness from exercising his constitutional rights, and 3) a causal link between the exercise of his constitutional rights and the adverse action taken against him.  <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001).  The Third Circuit has clearly stated that an allegation that a prisoner was falsely charged with a misconduct in retaliation for filing complaints implicates conduct protected by the First Amendment; the Plaintiff has satisfied the first prong.  <u>Mitchell v. Horn</u>, 318 F. 3d 523, 530 (3d Cir. 2003).

Defendants argue that the second prong of the test is fatal to Plaintiff's claim because "food tampering and lack of haircuts simply do not meet [the] standard of the second prong under <u>Rauser</u>." (Defs.'s Br. at 16).  Plaintiff also alleges, however, that, as a result of filing his grievances, he was denied access to the law library, placed in disciplinary custody and given a false misconduct. (Pl.'s Amend. Comp. at ¶ 43).  Because filing a false misconduct report against a prisoner has been deemed an adverse government action sufficient to support a retaliation claim, Plaintiff has met the second prong. <u>See</u> <u>Cooper v. Beard</u>, 2006 U.S. Dist. LEXIS 80655 at * 42 (E.D. Pa. Nov. 2, 2006) (citing <u>Smith v. Mensinger</u>, 293 F.3d 641 (3d Cir. 2002)).

Plaintiff's allegations also satisfy the third prong of the test in that he alleges the adverse actions were taken in retaliation for the filing of grievances.  <u>See</u> <u>Mitchell</u>, 318 F.3d at 530 (suggesting that the word "retaliation" in a prisoner's

complaint sufficiently implied a causal link between his

complaints and the misconduct charges filed against him).


### *Excessive Force (Counts Four and Five)*

In Count Four and Count Five of his Complaint, Plaintiff

makes allegations which fall under the rubric of an Eighth

Amendment excessive force analysis.  In Count Four, Plaintiff

alleges that Defendants violated his rights by "beating Plaintiff

with no provocation and using force without any need." (Pl.'s

Comp. at ¶ 46).  In Count Five, Plaintiff alleges that Defendants

"failed to intervene to protect [him] from the beating[.]"

In order to demonstrate an excessive force claim, a

Plaintiff must show that "'officials applied force maliciously

and sadistically for the very purpose of causing harm'

or that 'officials used force with a knowing willingness that

[harm would] occur.'" Ingalls v. Florio, 968 F. Supp. 193, 199

(D.N.J. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 835-36

(1994)).  "The core judicial inquiry is thus 'whether force was

applied in a good-faith effort to maintain or restore discipline,

or maliciously and sadistically to cause harm.'" Id. (quoting

Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Additionally, liability under for excessive force can be

established under a failure to intervene theory.  In Smith v.

Mesinger, 293 F.3d 641 (3d Cir. 2002), the Third Circuit stated

that "a corrections officer's failure to intervene in a beating

17

can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so." Id. at 650.

However, as stated above, Defendants cannot be held liable solely on the basis of respondeat superior, instead Plaintiff "must assert and prove some causal connection between a Defendant and the alleged wrongdoing in order to recover against that Defendant." Hill v. Central Reception Assignment Facility, 2005 U.S. Dist. LEXIS 23501 at * 7-8 (D.N.J. Oct. 6, 2005). A connection between a Defendant and the complained of conduct can be showed where a Defendant:

> (1) participated in violating Plaintiff's rights;
> (2) directed others to violate them;
> (3) as the person in charge, had knowledge of and acquiesced in his subordinates' violations; or
> (4) tolerated past or ongoing misbehavior.

Id. at * 8.

In his Complaint, Plaintiff's allegations of excessive force focus on the incident which occurred on July 27, 2004, when Officer Huber threw Plaintiff up against a wall, down a flight of steps and spat on him. (Pl.'s Comp. at 16-19). Plaintiff does not allege any other incidents of force. Instead, he makes general allegations that "Defendants violate[d] [his] Eighth Amendment rights... by beating [him] with no provocation" and that "Defendants" failed to intervene or to protect plaintiff from the beating. (Pl.'s Amend. Comp. at ¶¶ 46 & 48). While

18

Plaintiff's allegations have no factual support, at this stage, such a lack is not fatal to the claim. See Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004) ("the principles of notice pleading and liberal discovery rules allow for meritorious claims to proceed even if a confined prisoner cannot adduce all the necessary facts at the outset."). Therefore, Plaintiff's general allegations and the reasonable inferences drawn therefrom do not fail to state a claim upon which relief may be granted.

### *Plaintiff's Equal Protection Claims* (Counts Five and Six)

Counts Five and Six of Plaintiff's Complaint allege that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated when Defendants "failed to intervene to protect [him] from [a] beating" (Count Five) and failed to investigate his allegations and grievances (Count Six).[9]

Plaintiff's claim for failure to protect cannot survive on equal protection grounds. In order for claims regarding a violation of equal protection to survive, Plaintiff must allege that Defendants intentionally or purposefully discriminated against him. Village of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-22 (1977). Plaintiff has made no such

---

[9] In addition to examining Plaintiff's allegations regarding being beaten and the failure to intervene pursuant to the Equal Protection Clause, this Court has already examined this claim pursuant to an Eighth Amendment excessive force analysis (Count Four) as discussed above.

allegations indicating that he was beaten because of intentional or purposeful discrimination based on his membership in a protected class; his claim in Count Five cannot show an equal protection violation.

In Count Six, Plaintiff alleges that there was no grievance box where his allegations could be submitted and that guards were free to take grievances from the institutional mail and throw them away.  This claim must be dismissed for failure to state a claim upon which relief can be granted.  Again, as stated above, in order for a claim regarding a violation of equal protection to survive, Plaintiff must allege that Defendants intentionally or purposefully discriminated against him.  Village of Arlington Heights, 429 U.S. at 264-22.  Plaintiff has made no allegations whatsoever that he was intentionally treated differently from other prisoners; in fact, some of his grievances were related to situations faced by many inmates.[10]  Because Plaintiff has not alleged that he was treated differently from other prisoners, Count Six must be dismissed on equal protection grounds.

Even construing Count Six liberally, because Plaintiff is pro se, as a due process violation Plaintiff's claim must fail.[11]

---

[10]  In his Reply brief, Plaintiff states that Defendants did not equally protect the "inmates at Gloucester Count[y] Prison" (Pl.'s Reply Br. at "iiiiii" [sic]).

[11]  In construing a pro se complaint, a court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972)

20

Because there is no constitutional right to an effective grievance procedure and "'a state grievance procedure does not confer any substantive constitutional right upon prison inmates'", Plaintiff's claims must be dismissed even pursuant to a due process violation analysis. Burnside v. Moser, 138 Fed. Appx. 414 (3d Cir. 2005) (quoting Hoover v. Watson, 886 F. Supp. 410, 418 (D. Del 1995)); Gonzalez-Cifuentes v. U.S. Dept. Homeland Security, 2005 U.S. Dist. LEXIS 33072 at * 39 (D.N.J. May 3, 2005)(dismissing inmate's lack of grievance procedure claim and stating that inmates are not constitutionally entitled to a grievance procedure and the state creation of a grievance procedure does not created a liberty interest requiring procedural protections under the Fourteenth Amendment).

### *Plaintiff's Due Process Claim (Count Seven)*

Count Seven of Plaintiff's Complaint alleges that his procedural due process rights, pursuant to the Fourteenth Amendment, were violated when he was denied the right to call an inmate and a staff witness to a misconduct hearing. Plaintiff also asserts he was denied a "misconduct appeal" that resulted in being given "disciplinary time in the intake area." (Pl's. Amend. Comp. at 51-53).

In Wolff v. McDonnell, 418 US. 539, 556 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due

a defendant in such proceedings does not apply." The Court also
stated, however, that "[w]e are also of the opinion that the
inmate facing disciplinary proceedings should be allowed to call
witnesses and present documentary evidence in his defense when
permitting him to do so will not be unduly hazardous to
institutional safety or correctional goals." Id. at 566.

The Third Circuit has made clear that in order to state a
claim for a violation of procedural due process, a plaintiff
must, as a preliminary matter, be able to show that he has been
deprived of a liberty or property interest. Griffin v. Vaughn,
112 F.3d 703 (3d Cir. 1997).[12] Such a deprivation occurs when
"the prison 'imposes [an] atypical and significant hardship on
the inmate in relation to the ordinary incidents of prison life."
Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003) (quoting
Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In order to determine whether or not an inmate has been
subject to an "atypical and significant hardship", the Court must
consider the duration of the disciplinary confinement and
conditions of confinement in relation to other prison conditions.
Mitchell, 318 F.3d at 531-32. While a "marginal difference"
does not cross the constitutional line, a more dramatic departure
would. See id. (allowing plaintiff's due process claim to

---

[12] In Griffin, the court held that fifteen months in
administrative custody without a hearing did not present a
situation imposing an "atypical and significant hardship"
depriving plaintiff of a state created liberty interest.

proceed where deplorable conditions of confinement were alleged).

In the instant action, Plaintiff has neither alleged that he was deprived of good time credits as a result of the disciplinary hearing nor subject to deplorable conditions in the intake area. While certainly punitive in nature, Plaintiff's disciplinary time in the intake area neither indicates a loss of a liberty interest nor "present[s] a dramatic departure from the basic conditions" of Plaintiff's sentence. <u>Sandin</u>, 515 U.S. at 485 (finding that denial of witnesses at misconduct hearing, which resulted in inmate's subjection to discipline in segregated confinement, did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest).

Instead, Plaintiff spent an unspecified amount of time in the intake area. However, in light of the fact that he only spent approximately four months in the Gloucester County Correctional Facility - his time in the intake area was certainly less than the fifteen month period in the <u>Griffin</u> case. Thus, even accepting as true that Plaintiff was not allowed to present witnesses and was denied an appeal, his punishment in the intake area does not demonstrate that he was deprived of a state created liberty or property interest and he is not entitled to relief for a violation of due process protections. <u>See</u> <u>David v. Derosa</u>, 2005 U.S. Dist. LEXIS 18118 (D.N.J. 2005)(noting the procedural protections provided in <u>Wolff</u> but stating that said protections "must be afforded only when a prisoner's constitutional liberty

23

interest is implicated.")

This conclusion does not end the inquiry, however, because Plaintiff does not assert that it was the conditions or duration of confinement to the intake area that caused the deprivation of a liberty interest, but rather that "Plaintiff may have suffered a liberty interest as it may have affected his eligibility for parole." (Pl.'s Opp. Br. at iiiiiii [sic]).  While there is no federal constitutional right to parole, state law may create a parole entitlement protected by the Due Process Clause. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 422 U.S. 1, 7 (1979).  The New Jersey parole statue has been interpreted to give rise to an expectancy of release and thus an entitlement protected by the Due Process Clause.  Watson v. DiSabato, 933 F. Supp. 390, 392 (D.N.J. 1996).  The issue is, then, what process is due.

The New Jersey Supreme Court has stated that

Only a few, basic procedures are required to deal with the risks of erroneous or arbitrary determinations in this context. We conclude that the process required is notice of the pendency of the parole disposition, a statement by the objecting judge or prosecutor of the reasons why the punitive aspects of the sentence have not been fulfilled, and the opportunity for the prisoner to respond in writing to that statement of reasons.

New Jersey State Parole Bd. v. Byrne, 93 N.J. 192, 211 (1983); see also Watson, 933 F. Supp. at 393.  In the instant action, Plaintiff makes no allegations that pertain to the above mentioned process protections.  Moreover, if anything, his

24

allegations may be construed as a challenge to the duration of his sentence which is not a cognizable § 1983 claim.  See Kwanzaa v. Brown, 2006 U.S. Dist. LEXIS 61703 at *68-69 (D.N.J. Aug. 17, 2006) (stating that where plaintiff disputed his parole eligibility date, the decision to deny parole and the loss of commutation credits, such complaints were only to be remedied pursuant to a writ of habeas corpus after exhaustion of state remedies).

### State Claims (Counts Nine through Twelve)

Counts Nine through Twelve of Plaintiff's Complaint allege claims of reckless endangerment, harassment, aggravated assault, and assault and battery.  While Plaintiff asserts these causes of action based on the New Jersey Criminal Code, this Court has construed his claims as sounding in intentional tort.  As such, these claims are governed by the New Jersey Tort Claims Act ("NJTCA").  See Velez v. City of Jersey City, 180 N.J. 284 (2004) (finding that the NJTCA applies to common law intentional tort claims including claims for assault and battery).

Pursuant to the NJTCA, a plaintiff must "file his claim with the public entity within ninety days of accrual of his claim...." N.J.S.A. 59:8-8(a).  In the instant case, Plaintiff's cause of action for the aforementioned torts accrued, at the latest, as of August 2004 (when Plaintiff was transferred from the Facility). Thus, in order to preserve his tort claims, Plaintiff should have

filed notice before the ninety day period expired.  The record is devoid of any allegation that Plaintiff filed such notice.

Moreover, Plaintiff's failure to file a notice of claim is problematic even under the more lenient one year period allowed by N.J.S.A. 59:8-9, which allows, at the discretion of a judge of the Superior Court, notice to be filed "any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby", because Plaintiff's Complaint in this action was filed on October 3, 2005 - more than a year following the latest possible date of his tort claim accrual.  Therefore, because Plaintiff has failed to file proper notice, his claims based in intentional tort are barred pursuant to N.J.S.A. 59:8-8.[13]

In the event that Plaintiff has filed the required notice but has merely failed to plead this fact in his Amended Complaint, the Court will allow Plaintiff to amend his Complaint within twenty days to allege that he has complied with the notice procedures required pursuant to the NJTCA.

### Requested Relief

Plaintiff's requests for injunctive relief are moot because he has been removed from the Facility.  "[A]bsent class

---

[13] Note, however, that the facts related to the alleged beating, while not allowed to proceed based on a state law tort claim, will go forward pursuant to Plaintiff's Excessive Force Claim (Count Four).

certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted). Because Plaintiff has been transferred from the Facility and is now released from prison, [Docket No. 31], his requests for such relief are no longer viable and, to the extent that his Complaint requests such relief, it must be dismissed.  See Wilkins v. Bittenbender, 2006 U.S. Dist. LEXIS 20179 at * (M.D. Pa. March, 31, 2006) (dismissing plaintiff's claims for injunctive and declaratory relief because plaintiff had been transferred from the institution and there was no indication he would be returning).

**Conclusion:**

Overall, Counts One, Two, Three and Four proceed while the remaining claims are to be dismissed.  However, Plaintiff has twenty days from the date of the entry of this Opinion and Order to file any amendments that might cure the aforementioned defects unless such amendments would be inequitable, futile or untimely.

An accompanying Order will issue this date.

Dated: November 27, 2006             s/Renée Marie Bumb
                                     RENÉE MARIE BUMB
                                     United States District Judge